Jose GARCIA, Plaintiff,

v.

John H. BYNUM, Defendant.

Civ. A. No. 85–0465.

United States District Court, District of Columbia.

May 27, 1986.

Edward C. Bou, Washington, D.C., for plaintiff.

Edwin A. Sheridan, Fairfax, Va., for defendant.

## OPINION

JOYCE HENS GREEN, District Judge.

Before the Court is defendant John H. Bynum's motion for judgment notwithstanding the verdict, or for a new trial. This personal injury action was tried to a jury in January, 1986, which returned a verdict in favor of plaintiff Jose Garcia in the amount of $80,000. Defendant moves to have this decision set aside on the grounds that the verdict is contrary to the law and evidence presented, that no reasonable person could have found for plaintiff based on the evidence adduced at the trial, and that the verdict is based on sympathy, passion or prejudice. For the reasons set forth below, the Court grants defendant's motion.

On April 17, 1983, plaintiff was struck by a car driven by defendant while crossing in the vicinity of Fessenden Street, in northwest Washington, D.C. As a result of the accident, plaintiff suffered, among other injuries, a fractured leg. At trial, plaintiff gave the following account of the incident:

At approximately two in the morning, plaintiff and a companion, Eduardo, left the Godfather's Restaurant, located on Wisconsin Avenue, where plaintiff had had a beer. The two men walked approximately twenty-two feet in a southeasterly direction and, when they reached the curb, plaintiff

---

**9.** We note that our result is identical to a decision by Chief Judge Almeric Christian involving the same issue. *See Estate of Baby Brin v.* *Grand Union,* Civ. No. 1983–223, 1986 St.T. Supp. —— (D.V.I., April 3, 1986).

looked to his left and saw defendant's vehicle approximately five car lengths north of the Fessenden Street intersection. Plaintiff saw that the traffic light controlling the intersection was yellow and assumed that defendant would slow down and come to a complete stop. Plaintiff stepped out onto the street from between two parked cars and began crossing it in an unhurried fashion, approximately one-third of a city block south of the Fessenden Street intersection. He believed it was safe to cross in such a manner not only because he assumed defendant would stop, but because he saw what he believed to be a pedestrian crossing sign on the other side of Wisconsin Avenue indicating that it was proper to cross the street at this point, and because some five to ten other people had safely crossed Wisconsin Avenue immediately before him. When he reached the yellow line separating the three southbound lanes from the three northbound lanes of Wisconsin, he turned and saw the blinding lights of defendant's car. He remained motionless and was struck shortly thereafter. His friend Eduardo corroborated this version of the events.

Earlier, at his deposition, plaintiff had stated that he and Eduardo had walked thirteen or fourteen yards south along the sidewalk before stepping into the street, rather than entering it in front of the Godfather's Restaurant. Plaintiff also drew a diagram of the scene of the accident at the deposition, and marked a Xeroxed photograph, both of which indicated that he entered the street further south than the restaurant. He also stated that Eduardo crossed the street about twenty seconds before him, emerging from between different parked cars. These inconsistencies in his testimony were, of course, brought to the jury's attention at the trial. When confronted with them, he stated that he had been confused and intimidated during the deposition.

Officer Maloney, the police officer who investigated the accident, testified that it occurred in approximately the center of lane one—the lane closest to the curb—about mid-block between Fessenden and El-

licot Streets. He stated that the impact on the car was on the right side near the right front wheel, and that the vehicle had swerved to the left in an attempt to avoid the collision. He measured the skid marks produced by defendant as thirty-five feet before impact and thirty feet after. An official report prepared at the time of the accident confirmed his testimony. In addition, an independent eyewitness, Lt. Tcath, testified that plaintiff stepped into the street in front of Friendship Deli, approximately mid-block, and was struck in lane one, close to the center lane. These accounts of the accident coincided with defendant's.

The Court is well aware that motions for judgment notwithstanding the verdict are much disfavored, and should not be granted "unless the evidence, together with all inferences that can reasonably be drawn therefrom is so one-sided that reasonable men could not disagree on the result." *Romero v. National Rifle Association of America, Inc.,* 749 F.2d 77, 79 (D.C.Cir. 1984). The Court must weigh the evidence in the light most favorable to the plaintiff, and give him the advantage of every fair and reasonable inference. *Metrocare v. Washington Metropolitan Area Transit Authority,* 679 F.2d 922, 924–25 (D.C.Cir. 1982). The Court is not to substitute its judgment for that of the jury, nor weigh the credibility of witnesses. *Carter v. Duncan-Huggins, Ltd.,* 727 F.2d 1225, 1227–28 (3d Cir.1984). Given this standard, it is the rare case in which a court is justified in granting judgment notwithstanding the verdict. Nevertheless, this is such a case.

■ Under the standards discussed above, the Court must accept plaintiff's version of the accident, notwithstanding the contrary testimony of two non-party witnesses and plaintiff's own prior inconsistent statements. According to plaintiff, he saw defendant's car five car lengths north of the Fessenden Street intersection, stepped out from between two parked cars into Wisconsin Avenue one-third of a block

south of that intersection, and strolled across the street to just short of the median line, where he was struck by defendant. This version of events is far more favorable to plaintiff than that offered by defendant and the two witnesses, who stated that plaintiff walked out from between two parked cars in the middle of the block and stepped immediately into the path of defendant's oncoming car. Even so plaintiff's account of the accident demonstrates that he was contributorily negligent as a matter of law. By his own testimony, plaintiff crossed Wisconsin Avenue in an area which was neither a cross-walk nor an intersection, emerging from between parked cars at night wearing dark clothing, fully aware that a car was approaching. He then walked at a leisurely pace across three lanes without once looking to see whether he was correct in assuming that defendant would stop at the yellow light. It may be that a pedestrian crossing in a cross-walk, with a traffic light indicating that it is proper to cross, can reasonably assume that all traffic will stop and that he or she can cross without looking to the left or right. Plaintiff, however, crossed the street in an unmarked area at night, in a relatively darkened area, in violation of governing laws, *see* 18 D.C.M.R. §§ 2303 and 2304, knowing that a car was approaching a yellow light not far from him. Under these circumstances, plaintiff had a responsibility to exercise due care for his own safety, since he most certainly should have appreciated the danger in crossing when and where he did. It was wholly unreasonable, therefore, for plaintiff to walk in an unhurried fashion without looking to see whether defendant's car had actually stopped.

The fact that several people crossed the street safely shortly before him is entirely irrelevant. No reasonable juror could conclude that a pedestrian crossing in the middle of the street at night, fully aware that a car was approaching, was acting reasonably simply because others had crossed before him. It may be perfectly reasonable to cross a street at one moment, and suicidally dangerous the next; the reasonableness of a pedestrian's crossing of a street can only be judged at the moment he or she crosses it, and not at some time shortly before or after, when others cross. Moreover, it may be that the other pedestrians acted unreasonably too in crossing the street when they did, or that they crossed it much more rapidly than plaintiff. In any event, the mere fact that others had crossed the street before him in no way excuses plaintiff's failure to look to see if defendant's car had stopped. It was simply unreasonable for plaintiff to cross as he did in the middle of the block, with knowledge that a car was approaching, without looking around; that others crossed ahead of him in no way negates his inattentiveness or makes it reasonable.

So too, the fact that plaintiff believed a sign opposite him on Wisconsin Avenue indicated that it was appropriate to cross the street at that point[1] in no way excuses his heedlessness. The sign certainly did not guarantee his safety such that he could reasonably cross the street without paying any attention to defendant's car or any other traffic. The mere fact that plaintiff believed it was legal to cross the street in the middle of the block simply has no bearing on whether or not he exercised due care when he crossed; it clearly is not evidence from which a jury could find that his failure to watch for oncoming traffic was reasonable.

In sum, then, plaintiff crossed Wisconsin Avenue somewhere in the middle of the block at two in the morning wearing dark clothing in a dark area. He saw defendant's car approaching the Fessenden Street intersection about one-third of a city block to his north, but proceeded to cross anyway, in an unhurried, casual manner without looking around to see if defendant had

---

1. The sign in question pictures a pedestrian and faces motorists on Wisconsin Avenue, presumably to warn drivers that they are approaching a pedestrian crossing. For purposes of deciding this motion, of course, the Court accepts plaintiff's testimony that he understood the sign to mean it was proper to cross in the street at that point.

stopped. Under the circumstances, plaintiff's inattentiveness was so unreasonable that no jury could properly conclude that he was not contributorily negligent. Nor could a jury reasonably infer that plaintiff acted in a reasonable manner based on his testimony concerning the yellow light on Wisconsin Avenue, the pedestrians who crossed before him, or the sign on the opposite side of the street: these facts in no way excuse his failure to exercise even the slightest caution when crossing a street at night in the middle of the block. In crossing when and where he did, plaintiff failed to exercise due care for his own safety. No reasonable jury could find otherwise.

For all the foregoing reasons, the Court will grant defendant's motion and enter judgment, notwithstanding the verdict, in favor of defendant.

SO ORDERED.